## J. Giltner Igleheart, Sr., Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 9641. Promulgated May 6, 1948.

*John E. McClure, Esq.*, and *Edward L. Updike, Esq.*, for the petitioner.

*Richard L. Greene, Esq.*, for the respondent.

### OPINION.

Leech, *Judge*: This proceeding involves a deficiency in income tax for the calendar year 1941 in the amount of $2,232.49. The respondent asks for an increased deficiency based on additional taxable income in the amount of $92.63. The sole issue is the extent to which amounts received under nine contracts with various life insurance companies in the taxable year are includible in petitioner's gross income. All the facts were stipulated and are incorporated in our findings of fact by reference. The material facts may be summarized as follows:

Petitioner is an individual who resides in Evansville, Indiana. His income tax return for the period involved was filed with the collector of internal revenue for the district of Indiana.

Prior to the taxable year 1941, petitioner applied for and was issued nine contracts by various insurance companies as follows:

| Number for purposes of this proceeding | Company | Date of issuance | Contract number |
|---|---|---|---|
|  | Equitable Life Assurance Society | Apr. 25, 1931 | 8, 439, 386 |
| 2 | Equitable Life Assurance Society | Apr. 30, 1931 | 8, 439, 387 |
| 3 | Equitable Life Assurance Society | Jan. 5, 1935 | 9, 683, 415 |
| 4 | Penn Mutual Life Insurance Co | Dec. 5, 1933 | 1, 786, 573 |
| 5 | Penn Mutual Life Insurance Co. | Nov. 9, 1933 | 1, 786, 574 |
| 6 | Sun Life Assurance Co. of Canada | Feb. 28, 1928 | A. 16596 |
| 7 | Sun Life Assurance Co. of Canada | June 1, 1928 | A. 17281 |
| 8 | Sun Life Assurance Co. of Canada | Apr. 18, 1930 | A. 101986 |
| 9 | Sun Life Assurance Co. of Canada | Dec. 18, 1933 | A. 107571 |

Petitioner executed a single application for each contract. He paid the specified consideration in a single sum either prior to or at the

time such contract was issued. Petitioner was not required to take any medical examination in connection with the issuance of any such contract. Each contract was issued without regard to petitioner's age or sex. The amount of the single "premium" was computed without reference to petitioner's age or sex or tables of mortality. The amount of the single "premium" charged petitioner (except as to contract No. 3) was based on the principal sum of the contract plus an additional charge of 5 per cent of the principal (or 6 per cent as to contracts Nos. 4 and 5). The amount of the single "premium" charged by the companies to all applicants for contracts of the respective types issued to petitioner was identical, regardless of the age or sex of the applicant. The principal sum (sometimes referred to in certain of the contracts herein as "death benefit" or "minimum death refund") provided for in each of the contracts is payable to the petitioner in cash upon the surrender of the contract to the company, or is payable to the beneficiaries designated in the contract upon the death of the petitioner.

The following tabulation sets forth: (1) Cost of the contract (single "premium"); (2) principal sum payable to petitioner on surrender of contract, or upon death to beneficiaries; (3) annual payments to petitioner, exclusive of amounts allotted from surplus earnings; (4) additional amounts distributed out of surplus earnings in 1941; and (5) total amounts received by petitioner in 1941.

| Number | Company | (1) Cost of contract single "premium" | (2) Principal sum payable to petitioner on surrender or upon death to beneficiary | (3) Annual payments to petitioner exclusive of amounts allotted from surplus earnings | (4) Additional amounts distributed by company out of surplus earnings in 1941 | (5) Total amounts received by petitioner in 1941 |
|---|---|---|---|---|---|---|
| 1 | Equitable Life | $52,500.00 | $50,000.00 | $1,750.00 | ------------ | $1,750.00 |
| 2 | Do | 52,500.00 | 50,000.00 | 1,750.00 | ------------ | 1,750.00 |
| 3 | Do | 5,850.30 | 2,925.15 | 272.42 | $10.35 | 282.77 |
| 4 | Penn Mutual Life | 10,600.00 | 10,000.00 | 300.00 | 11.00 | 311.00 |
| 5 | Do | 5,300.00 | 5,000.00 | 150.00 | 5.50 | 155.50 |
| 6 | Sun Life | 52,500.00 | 50,000.00 | 1,750.00 | 53.85 | 1,803.85 |
| 7 | Do | 10,500.00 | 10,000.00 | 350.00 | ------------ | 350.00 |
| 8 | Do | 21,000.00 | 20,000.00 | 700.00 | ------------ | 700.00 |
| 9 | Do | 2,100.00 | 2,000.00 | 70.00 | ------------ | 70.00 |
| | Total | ------------ | ------------ | ------------ | ------------ | 7,173.12 |

Each of the nine contracts was in effect during the entire taxable year as originally issued, except for changes not here material. Petitioner had not assigned any interest therein, nor exercised his right under each contract to surrender the contract and receive the cash value equal to the principal sum or minimum death refund thereof.

The rates of interest allowed by each of the companies, at the time

the foregoing contracts were issued, for policy proceeds and dividends left on deposit with the company, were as follows:

<pre>
Equitable Life Assurance Society_____ 4¾%
Penn Mutual Life Insurance Co_____  3%
                                          in 1928 and 1930, 5½%
Sun Life Assurance Co. of Canada_____  in 1933,         4½%
</pre>

Petitioner reported in his income tax return for the taxable year 1941 the amounts received under the nine contracts herein, as set forth in columns 1, 2, and 3, and the amounts now contended by petitioner to be taxable and nontaxable are set forth in columns 4 and 5 of the following tabulation:

| Number | Company | As reported on return | | | Portions now contended by petitioner as taxable and nontaxable | |
|---|---|---|---|---|---|---|
| | | (1) Amount received | (2) Taxable | (3) Non-taxable | (4) Taxable | (5) Non-taxable |
| 1 | Equitable Life | $1,750.00 | $693.00 | $1,057.00 | $693.00 | $1,057.00 |
| 2 | Do | 1,750.00 | 693.00 | 1,057.00 | 693.00 | 1,057.00 |
| 3 | Do | 282.77 | 175.51 | 107.26 | 175.51 | 107.26 |
| 4 | Penn Mutual Life | 311.00 | 177.75 | 133.25 | 116.24 | 194.76 |
| 5 | Do | 155.50 | | 155.50 | 61.52 | 93.98 |
| 6 | Sun Life | 1,803.85 | 782.96 | 1,020.89 | 782.96 | 1,020.89 |
| 7 | Do | 350.00 | 156.59 | 193.41 | 156.59 | 193.41 |
| 8 | Do | 700.00 | 299.87 | 400.13 | 299.87 | 400.13 |
| 9 | Do | 70.00 | 70.00 | | 27.24 | 42.76 |
| | Total | 7,173.12 | 3,048.68 | 4,124.44 | 3,005.93 | 4,167.19 |

The respondent in his notice of deficiency determined that the additional amount of $4,031.81 was includible in petitioner's taxable income under section 22 of the Internal Revenue Code. The determination was based on the inclusion of the entire amounts received by petitioner under the nine contracts in the aggregate amount of $7,173.12, less a portion of the amounts received under contract No. 3, in the sum of $92.63, which the respondent excluded, or a net amount of $7,080.49. The respondent now avers that the sum of $92.63 was erroneously excluded and contends that the entire amount of $282.77 received under contract No. 3 is includible in petitioner's taxable income. The respondent makes claim for an increased deficiency in income tax for the taxable year 1941 from the amount of $2,232.49, originally asserted, to the amount of $2,285.11.

The question presented is the extent to which payments received by petitioner under nine contracts executed by him with three insurance companies are includible in gross income for the taxable year 1941. Petitioner contends only that the amounts were received as annuities under annuity contracts and that such portion of each payment as is in excess of 3 per cent of the consideration is exempt under section 22

(b) (2) of the Internal Revenue Code.[1] The respondent argues that the contracts are not annuity contracts within the meaning of that section, but constitute investments, so that the annual payments are nothing more than interest or earnings on an invested fund and taxable in full under section 22 (a) of the code.

The question is whether the payments received constitute annuities within the meaning of the pertinent statute. Petitioner insists that the case of *Bodine* v. *Commissioner*, 103 Fed. (2d) 982; certiorari denied, 308 U. S. 576, is controlling. We do not agree. The decision in the *Bodine* case was predicated on the provisions of section 22 (b) (2) of the Revenue Act of 1932.[2] The Revenue Act of 1934 made significant amendments to such section. See footnote 1, *supra*. The instant case must be viewed in the light of those changes. We considered the scope of such amendments in *George H. Thornley*, 2 T. C. 220; reversed, 147 Fed. (2d) 416, on other issues. We there determined what the Congress intended by the use of the phrase "Amounts received as an annuity" incorporated in section 22 (b) (2) of the Revenue Act of 1934. On page 229, we said:

Congress deemed it sufficient to use the phrase "as an annuity" to define the class of receipts which is to be included in gross income in part. But the evident variety of meanings given to the term *annuity*, or the loose use of that

---

[1] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \* \*

(2) Annuities, etc.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. \* \* \*

[2] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

\* \* \* \* \* \* \*

(2) ANNUITIES, Etc.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts) under a life insurance, endowment, or annuity contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph.

term, leaves room for argument. It is necessary to inquire, therefore, what kind of receipts Congress had in mind when it referred to "amounts received as an annuity." The reports of the committees provide much in answer to the question. It is said that "Payments to annuitants are, in fact, based upon mortality tables which purport to reflect a rate of return sufficient to enable the annuitant to recover his cost and in addition thereto a low rate of return on his investment." * * * This has received explanation in Taxable Income, Magill (1936), p. 375, where it is said:

> It is well known that an annuity is calculated to yield a recipient who lives out his expectancy a total amount equal to the consideration paid, plus interest thereon. Hence, each annual payment, from the actuarial point of view, is made up partly of a return of capital and partly of income.

We think it is made very clear in the committee reports and in the Congressional hearings (see Seidman's Legislative History of Federal Income Tax Laws (1938), pp. 295–299), that Congress meant the phrase "amounts received as an annuity" to have the meaning which insurance companies and actuaries customarily give to the phrase; or, more particularly, to mean amounts computed with reference to the age and sex of the insured, or payee, and with reference to life or lives. * * *

Congress, in amending section 22 (b) (2) by the Revenue Act of 1934, was concerned with that type of annuity contract, based upon the expectancy of the annuitant, under which the annual payments to be made during the term of the contract exhaust the consideration paid therefor. Under such a contract the annual payments necessarily include a return of capital which was to be exempted from income tax. We think the formula prescribed indicates clearly that such was the purpose of the amendments. The contracts in question are of a different type. The amounts of the single premiums were computed without reference to petitioner's age, sex or tables of mortality. The annual payments to be made thereunder involve no return of capital, since the principal sum, except as respects contract No. 3, is available to petitioner on his surrender of the contract or is payable to his nominees at his death. Under such a situation, there is no reason to apply the prescribed formula, since there is no return of capital to be excluded. Furthermore, except as to contract No. 3 as to which the record is silent, the annual payment is based upon a presumed interest earning of either 3 or, in some instances, $3\frac{1}{2}$ per cent of the principal sum paid for the contract. This rate is less than or not in excess of the rate each of the companies allowed on policy proceeds left on deposit during the years the contracts in controversy were executed. This fact also indicates that no part of the annual payment includes any return of capital. Petitioner, we think, has made an investment rather than a purchase of an annuity within the meaning of section 22 (b) (2). In effect each of the contracts here in controversy is an agreement under which petitioner, for an additional consideration, has deposited money with an insurance company and the latter has

agreed to pay an annual amount for its use until the happening of certain contingencies, when the principal sum is to be paid.

The cases of *Commissioner* v. *Meyer*, 139 Fed. (2d) 256, and *Helvering* v. *Meredith*, 140 Fed. (2d) 973, referred to by petitioner, do not support his position. We do not think they conflict with the view expressed herein.

The amount of the single "premium" charged petitioner, except as to contract No. 3, was based on the principal sum of the contract plus an additional charge of 5 per cent (or in contracts Nos. 4 and 5, of 6 per cent) of the principal sum. The additional charge is a part of the consideration paid. The contracts run for indefinite periods. But whether any part of such additional cost may or can be allocated to the annual payments received under the contracts in the taxable year, we do not decide. Neither party suggests any such allocation.

Contract No. 3 issued by the Equitable Life Assurance Society varies to some extent from the other eight contracts. The basis or method of computing the single "premium" and the annual payment is not revealed except that the computation of the single "premium" depended in no way upon the expectancy of petitioner or tables of mortality. Under contract No. 3, upon the surrender of the contract or upon the death of the petitioner, only one-half of the principal sum is to be paid in cash, and a participating life annuity with certain fixed annual payments is to be issued to petitioner or his beneficiaries. Since the contingencies under which the provisions for the issuance of such annuity contracts become effective had not occurred in the taxable year, we regard such contract on this record, for present purposes, as similar in type to the other eight contracts.

We conclude that no part of the sums received by petitioner in the taxable year under the contracts involved is subject to taxation under the formula prescribed in section 22 (b) (2) of the code. It follows that the annual payments and the additional amounts distributed by the company out of surplus earnings to petitioner in the taxable year are includible in his gross income under section 22 (a) of the code. The respondent is sustained and his request for an increased deficiency is allowed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BLACK, *J.*, dissenting: I am unable to agree with the conclusion reached by the majority opinion.

It seems to me that there is but little difference in the contracts here involved from those which were present in *Bodine* v. *Commissioner*,

103 Fed. (2d) 982; certiorari denied, 308 U. S. 576; and *Commissioner* v. *Meyer*, 139 Fed. (2d) 256, affirming Tax Court memorandum opinion of June 4, 1942.

The *Meyer* case involved the taxable years 1937 and 1938, which were years subsequent to the amendments of the Revenue Act of 1934, upon which the majority opinion lays considerable stress. In the *Meyer* case, the Circuit Court, in affirming our decision, which was in favor of the taxpayer, said:

Petitioner's [the Commissioner's] contention is that respondent [the tax-payer] delivered to the insurance company $55,000 and as consideration therefor the insurance company obligated itself to pay to the respondent interest by the way of an annuity during his life and the principal sum of $50,000 to his wife at his death, and that the bi-section of the agreement into the form of a life insurance policy and an annuity is to be ignored. This contention must be denied. To adopt it leads us into the field of unrealities.

In the instant case the majority opinion sustains the contention of the Commissioner, which in my judgment is essentially the same as the court in affirming our memorandum opinion in the *Meyer* case said should not be adopted, but should be rejected. I, therefore, respectfully dissent.